UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kerry McLain,

        Plaintiff,

v.

Andersen Windows, Inc., d/b/a
Andersen Corporation, d/b/a
Andersen Distribution, d/b/a
Andersen Logistics,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 06-4389 ADM/JSM

---

Charles L. Friedman, Esq., Friedman Law Office, Minneapolis, MN, on behalf of Plaintiff.

David M. Wilk, Esq., Larson King, LLP, St. Paul, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On February 9, 2007, oral argument before the undersigned United States District Judge was heard on Defendant Andersen Windows, Inc.'s ("Andersen Windows") Motion for Partial Summary Judgment [Docket No. 24]. In Count I of his Complaint [Docket No. 1], Plaintiff Kerry McLain ("McLain") asserts a claim for failure to make reasonable accommodation in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08, subd. 6. For the reasons set forth herein, Defendant's Motion for Partial Summary Judgment is granted.

## II. BACKGROUND[1]

Since Defendant's Motion presents a pure question of law, only an abbreviated account of the facts is necessary. Since August 1999, McLain has worked as a truck driver for Andersen

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Distribution, a wholly-owned subsidiary of Andersen Windows (Andersen Windows and Andersen Distribution will be collectively referred to as "Andersen"). First McLain Aff. [Docket No. 4] ¶ 7. McLain has worked for Andersen's Brooklyn Park, Minnesota facility. Id. ¶ 8. McLain has a Class B truck driver's license. Mathias Aff. [Docket No. 11] ¶ 3. Prior to March 2006, McLain's job consisted primarily of driving trucks to Home Depot Stores and unloading Andersen's products onto flat loading docks. Id. ¶ 5. In early 2006, Andersen began using semi tractor-trailers for deliveries to Home Depot, in response to Home Depot's larger orders. Id. ¶ 6. Drivers of semi tractor-trailers must have a Class A truck driver's license. Id.

Around March 2006, John Mathias, McLain's supervisor, met with McLain to discuss upcoming changes to McLain's delivery schedule. Id. ¶ 8; First McLain Aff. ¶ 20. These changes required McLain to make some deliveries to "job sites." Mathias Aff. ¶ 9; First McLain Aff. ¶ 20. Job site deliveries are deliveries directly to homes and construction sites. Mathias Aff. ¶ 7; First McLain Aff. ¶ 16. Unloading surfaces at job sites are often uneven, and a driver usually must use a cart or dolly and a ramp to unload products. Mathias Aff. ¶ 7; First McLain Aff. ¶ 16.

After McLain began making job site deliveries, he experienced pain in his right knee. First McLain Aff. ¶ 24. McLain believes that unloading products at job sites aggravated and further injured his right knee, where he had a preexisting three percent permanent disability suffered in August 1985. Id. ¶¶ 17, 19, 24. Andersen was unaware of McLain's preexisting injury. Id. ¶ 23. Starting May 5, 2006, McLain missed eleven days of work while recovering from his injury. Id. ¶ 31; Mathias Aff. ¶ 10.

McLain claims that when he returned to work on May 22, 2006, he asked Mathias not to

2

assign him to job site deliveries. First McLain Aff. ¶ 35. However, Mathias again assigned McLain to deliver to job sites, and McLain experienced more pain in his right knee. Mathias Aff. ¶ 10; First McLain Aff. ¶¶ 36-37. On May 25, 2006, McLain provided Andersen with a doctor's note indicating that he was restricted for four weeks from lifting more than 20 pounds and from repetitive walking. First McLain Aff. ¶ 39, Ex. C. After determining that no driver work was available within those restrictions, Andersen placed McLain on short term disability leave beginning May 26, 2006. Mathias Aff. ¶ 10; First McLain Aff. ¶ 42.

McLain returned to work without restrictions on July 10, 2006. Mathias Aff. ¶ 11; First McLain Aff. ¶ 43. Mathias again assigned McLain to make job site deliveries. Mathias Aff. ¶ 11; First McLain Aff. ¶ 46. On August 10, 2006, McLain received a doctor's report permanently restricting him from making job site deliveries. First McLain Aff. Ex. E. On August 15, 2006, Steve French ("French"), Plant Manager of Andersen's Brooklyn Park facility, told McLain not to come to work on August 16, 2006. Id. ¶¶ 47, 64. McLain has not worked since August 15, 2006.

On October 13, 2006, McLain filed his Complaint against Andersen. Count I of the Complaint asserts a claim of failure to accommodate under the MHRA. Counts II through V assert claims under the MHRA for interference with age and pension benefits, age discrimination, sex discrimination, disability discrimination, and discriminatory reprisal. Additionally, Count VI asserts a claim of common law misrepresentation.

### III. DISCUSSION

**A.     Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Defendant's Motion for Partial Summary Judgment**

Andersen moves for summary judgment on McLain's failure to accommodate claim. Under the MHRA, "it is an unfair employment practice for an employer . . . not to make reasonable accommodation to the known disability of a qualified disabled person . . . unless the employer . . . can demonstrate that the accommodation would impose an undue hardship." Minn. Stat. § 363A.08, subd. 6. The MHRA defines a disability as "any condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Minn. Stat. § 363A.03, subd. 12.

McLain concedes that his three percent permanent disability to his right knee does not materially limit a major life activity. See Compl. ¶ 21; Tr. of Nov. 16, 2006 Oral Argument [Docket No. 23] at 11-12. However, he contends that he has a record of disability and that

Andersen regarded him as disabled.

Assuming arguendo that McLain has a record of disability or was regarded as disabled, Andersen argues it has no obligation under the MHRA to reasonably accommodate McLain because he has no physical impairment that materially limits a major life activity. In other words, Andersen argues the MHRA only requires a reasonable accommodation for employees with actual disabilities.

Since Minnesota case law does not resolve the issue, Andersen relies on Weber v. Strippit, Inc., 186 F.3d 907 (8th Cir. 1999), where the Eighth Circuit interpreted analogous provisions of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), (b)(5)(A). Under the ADA, an employer must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless doing so would pose an undue hardship. 42 U.S.C. § 12112(b)(5)(A). The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities . . .; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2).

In Weber, the Eighth Circuit held that the ADA[2] does not require reasonable accommodation of employees who are regarded as disabled. Weber, 186 F.3d at 917. The Weber court reasoned that "[i]mposing liability on employers who fail to accommodate non-disabled employees who are simply regarded as disabled would lead to bizarre results." Id. at 916. For example,

---

[2] Weber brought failure to accommodate claims under both the ADA and the MHRA. However, the parties did not distinguish between the two statutes; therefore, the Weber court analyzed the failure to accommodate claims exclusively under the ADA. Weber, 186 F.3d at 912.

5

> Assume . . . that Weber's heart condition prevented him from relocating to Akron but did not substantially limit any major life activity. Absent a perceived disability, defendants could terminate Weber without exposing themselves to liability under the ADA. If the hypothetical is altered, however, such that defendants mistakenly perceive Weber's heart condition as substantially limiting one or more major life activities, defendants would be required to reasonably accommodate Weber's condition by, for instance, delaying his relocation to Akron. Although Weber's impairment is no more severe in this example than in the first, Weber would now be entitled to accommodations for a non-disabling impairment that no similarly situated employees would enjoy.

Id. The Weber court concluded that "[t]he ADA cannot reasonably have been intended to create a disparity in treatment among impaired but non-disabled employees" based on employers' misperceptions, and therefore employers do not have to accommodate employees who are regarded as disabled. Id. at 917. The courts of appeals are divided on this issue. Compare Kaplan v. City of N. Las Vegas, 323 F.3d 1226, 1232-33 (9th Cir. 2003) ("regarded as" employee can not maintain reasonable accommodation claim) with D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1237 (11th Cir. 2005) ("regarded as" employee can maintain reasonable accommodation claim); Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 775 (3d Cir. 2004) (same).

Andersen urges that the logic of Weber should be applied to claims of failure to accommodate under the MHRA. Although Weber analyzed the failure to accommodate claims exclusively under the ADA, the Eighth Circuit generally analyzes claims under the MHRA and the ADA using the same standard. Philip v. Ford Motor Co., 328 F.3d 1020, 1023 n.3 (8th Cir. 2003). McLain contends Weber should not apply in this case because there are meaningful textual differences between the MHRA provisions at issue in this case and the parallel provisions of the ADA. McLain argues it is significant that the MHRA requires reasonable accommodations "to the known disability of a qualified *disabled person*," Minn. Stat. §

363A.08, subd. 6 (emphasis added), whereas the ADA requires reasonable accommodations "to the known physical or mental limitations of an otherwise qualified *individual with a disability*." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). However, this is a distinction without a difference, because a "disabled person" under the MHRA and an "individual with a disability" under the ADA are both defined to include an employee who has an actual disability, a record of disability, or who is regarded as disabled.

This Court finds that the logic of Weber applies to claims under the MHRA. For the reasons stated in Weber, perverse results will occur if "regarded as" employees can maintain a reasonable accommodation claim under the MHRA. Similarly, perverse results will also occur if non-disabled employees who have a history of disability can maintain a reasonable accommodation claim under the MHRA. For example, if two employees both have the same non-disabling physical impairment, but one has a history of disability while the other does not, it would be perverse for the MHRA to require the employer to accommodate one employee's impairment but not the other's. Therefore, Andersen is entitled to summary judgment on McLain's failure to accommodate claim.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Andersen Windows, Inc.'s Motion for Partial Summary Judgment [Docket No. 24] is **GRANTED**.

BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 6, 2007.